## EZEKIEL M. MILLER *et al.*
### *v.*
## DANIEL M. JONES, Administrator.

1. PARTNERSHIP—*relative rights and duties of administrator of a deceased partner and the survivor.* Primarily, the administrator of a deceased partner has nothing to do with either the partnership assets or the partnership debts.

2. The surviving partners take the exclusive legal title to the former for the payment of the latter. If any assets remain in their hands, after payment of all liabilities, they should account to the administrator for the distributive share of the deceased, which then becomes, for the first time, assets in his hands as administrator.

3. If, however, there is an unreasonable delay on the part of the surviving partners in closing the affairs of the partnership, or if they are wasting the partnership property, it is then the right and duty of the administrator, if the partnership creditors remain inactive, to file a bill, calling the survivors to account, and praying for an appointment of a receiver, and the complete adjustment of the partnership affairs.

4. In this case, the deceased partner died in October, 1858, and his administrator filed his bill against the survivors for an account in May, 1860, alleging they had not closed the affairs of the partnership, and the delay was considered sufficient to justify the filing of the bill.

5. The administrator himself, if a proper person, may, in such case, be made receiver, but, in that event, the court should require him to give a new bond as such.

6. Although there may be such delay on the part of the survivors, in closing the partnership affairs, as would justify the filing of a bill by the administrator of a deceased partner for the purpose of a settlement, yet, in the absence of any proof of bad faith, or such degree of negligence as would charge the survivors personally for partnership property sold by them, the administrator could only require them to account personally for the actual proceeds of the sale. The debts due for the unpaid sales would pass to the receiver, to be collected by him.

7. Surviving partners cannot be required to pay to the administrator of a deceased partner their proportion of partnership debts allowed against the estate, unless it appears that the administrator has paid such debts.

WRIT OF ERROR to the Circuit Court of Union county; the Hon. ALEXANDER M. JENKINS, Judge, presiding.

Some time prior to the 31st of October, 1858, John Adams, Ezekiel M. Miller and Nimrod C. E. Adams, entered into copartnership in a steam saw and grist-mill, in Union county, Illinois. The business was carried on until that day, when John Adams died. During the same year, Sylvester Adams was appointed administrator of the estate of John Adams, deceased; and on the 9th day of May, 1860, exhibited his bill in chancery in the court below against the surviving partners of his intestate, in which he alleged that there were debts owing by the firm to the amount of $1,987.88, which had been allowed in the Probate Court against the estate of his intestate.

The complainant alleges that within two years prior to the filing of the bill, the defendants had received and used profits from the mill amounting to $2,000, of which one-third belonged to the complainant as administrator. That at the death of his intestate there were due to the firm debts to the amount of about $2,000 more. That the surviving partners had collected said debts, used the stock on hand, and run the mill, but have not paid the firm debts nor attempted to do so; nor have they settled with complainant as administrator, but falsely pretend they are not able to do so, and want the complainant to pay the debts of the firm out of the individual estate of his intestate. The bill prays for an account and for the appointment of a receiver.

The defendants answered under oath, and filed accounts as exhibits, setting forth the condition of the partnership affairs, as follows: They deny that there was any money on hand belonging to the firm at the time of the death of complainant's intestate. They allege that the lumber on hand was divided, one-third thereof being given to said administrator, who sold the same; and the residue thereof, $261.67, sold, and the proceeds applied to the use and benefit of their said partnership business.

They exhibit an account of lumber sold to the amount of $2,043,62; amount received for the same, $1,741.37, leaving outstanding a balance of $302.25.

They show amount of sales of lumber since the death of intestate to be $3,438.67, gross receipts thereon $1,910.49, still due for the same $1,528.20. Amount owing by the firm before death of intestate for expenses of the mill $789.87, amount paid thereon $706.00, leaving balance unpaid $83.87.

The answer shows the amount paid by defendants on expenses incurred for cutting timber, etc., during the partnership to be $471.40.

The defendant Miller alleges there was due him for board of hands before the death of intestate, $18.68, and since his death, on the same account, $158.13; and he charges for his own labor, twenty months and fourteen and a half days, at $50 per month, $1,027.88. Admits that he has received out of the mill $696.41, and that he also received his share of lumber, $136.69, on hand at the death of Adams.

The answer shows the expenses of the mill since the death of Adams to be $1,456.35, and that defendants have paid thereon $1,262.20, leaving balance due, $193.95.

The defendants allege the amount of firm debts allowed against the estate of Adams to be $2,038.02.

The cause was heard on the bill, answer, exhibits and replication, and the court rendered the following decree: The court finds that John Adams, in his life-time, and the said defendants, Ezekiel M. Miller and Nimrod C. E. Adams, were equal partners in a saw-mill, by the name and style of Adams, Miller

& Co., and were to share equally in the profits arising therefrom, and were to bear an equal proportion of the losses, if any were sustained. The court further finds that the saw-mill was operated and run by the three partners during the life-time of said John Adams, and after his death by the surviving partners, Ezekiel M. Miller and Nimrod C. E. Adams, the defendants herein, and by consent of Sylvester Adams, administrator of John Adams, deceased, and until the          day of A. D. 18   , and accounted to the estate of said John Adams, deceased, for the amount of lumber made and sold. And the court further finds the amount of lumber sold from the mill by the defendants, and before unaccounted for to the estate of John Adams, deceased, to be the sum of five thousand four hundred and eighty-two dollars and twenty-seven cents, and that the expenses of running said mill (reducing the monthly wages of Ezekiel M. Miller from fifty, as charged, to forty dollars per month), and money paid out on partnership debts, etc., by the defendants, as per account rendered by the defendants, to be the sum of four thousand one hundred and twenty-eight dollars and sixteen cents, which being deducted from the amount of lumber sold, as per account rendered, leaves a balance of thirteen hundred and fifty-four dollars and eleven cents; of this balance the estate of John Adams, deceased, is entitled to the one-fourth part, the same being the sum of four hundred and fifty-one dollars and thirty-seven cents. And the court finds further that the firm of Adams, Miller & Co., were indebted in the sum of two thousand and thirty-eight dollars and two cents, which has been allowed by the County Court of Union county against the estate of John Adams, deceased, and that of the sum, the said estate of John Adams, deceased, in equity, ought to pay the sum of six hundred and seventy-nine dollars and thirty-four cents, with the interest on the same from the time of said allowance until paid, and that the remaining two-thirds, amounting to the sum of one thousand three hundred and fifty-eight dollars and sixty-eight cents, with the interest on the same from the date said allowance was made by said County Court against said estate of John Adams,

deceased, to the second day of November, A. D. 1863, the date of the decree, amounting to the sum of three hundred and seventy-nine dollars and seventy-four cents, the defendants Ezekiel M. Miller and Nimrod C. E. Adams are in equity severally and jointly bound to pay to the said complainant, together with the aforesaid sum of four hundred and fifty-one dollars and thirty-seven cents, the one-third part of the net proceeds of sales of lumber, as per account of defendants rendered as aforesaid, making the aggregate sum of two thousand one hundred and eighty-nine dollars and seventy-nine cents, the aforesaid two-thirds of indebtedness of said firm of Adams, Miller & Co., allowed against the estate of said John Adams, deceased, by the County Court of Union county, the interest on the same, as aforesaid, and the said one-third net proceeds of sales, etc., as aforesaid.

It is therefore ordered, adjudged and decreed by the court, that the said defendants, Ezekiel M. Miller and Nimrod C. E. Adams, within ninety days from this date, pay to the said complainant, Daniel M. Jones, administrator *de bonis non* of the estate of John Adams, deceased, the said sum of two thousand one hundred and eighty-nine dollars and seventy-nine cents, with the interest thereon, to be computed from this day until paid, and also the costs of this suit to be taxed, and, in default thereof, that execution issue on the decree against the said defendants for the debt and costs aforesaid, and the money collected as paid over to the said complainant, as under execution issued upon judgments at law.

It is further ordered, adjudged and decreed that a lien be, and a lien is hereby, created upon said mill in complainant's bill mentioned, and also upon the estates of each of the said defendants, both real and personal, for the payment of said sum of money, debt as aforesaid, and interest on the same until paid.

It is further ordered and decreed that the said complainant, immediately on the receipt of the money, the debt, interest and costs aforesaid, apply it to the satisfaction and in payment of the said sum of two thousand and thirty-eight dollars and two

cents, with the interest thereon, allowed against the estate of John Adams, deceased, and for no other purpose whatever.

And it is further ordered that the master in chancery of Union county be and he is hereby required, and it is hereby made his special duty, to look after and see that the decree is complied with by the parties thereto, and report to this court at the next term, etc.

The defendants thereupon sued out this writ of error.

Messrs. HAYNIE, MARSHALL & GILBERT, for the plaintiffs in error, made these points:

1. The court below erred in charging the defendants with the gross amount of lumber sold, when they had received only a part of the money therefor, the residue being outstanding and uncollected. The administrator of a deceased partner can only call upon the survivor for an account of money actually received by him.

2. The court found that the partnership claims were *allowed* against the estate of Adams, deceased, *not paid,* to the amount of $2,038.02, and decreed defendants below to pay two-thirds of this amount to the administrator, with interest. The survivors might still be compelled by the creditors to pay the entire amount to them, notwithstanding its allowance against Adams' estate. The administrator cannot administer on the partnership. He can only recover the shares due the estate for sums *paid out.* The *allowance* of the claims against the estate does not entitle the administrator to recover from the surviving partners. The whole extent of the power of an administrator is to call surviving partner to account for money, etc., received by him in which deceased had an interest. Administrator cannot compel survivors to pay the debts due from the firm into his hands. At most, he could only compel *contribution after payment.*

Mr. JOHN DOUGHERTY, for the defendant in error.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

This was a bill in chancery filed by Jones, as administrator of John Adams, against Miller and Nimrod Adams, surviving partners of the deceased, in a steam saw and grist-mill. The bill set forth that partnership claims to the amount of $1,987.88 had been allowed against the estate of John Adams; that assets to over that amount had come to the hands of the surviving partners, and that they refused to settle for the same or apply them in payment of the partnership liabilities. The bill prayed an account under oath, and the appointment of a receiver. The defendants answered under oath, and filed accounts as exhibits, setting forth the condition of the partnership affairs. A replication was filed, and the case was heard on bill, answer and replication, without proof, except that furnished by the answer. The court rendered a decree charging the defendants personally with the total amount of the partnership sales, although the amount due for a portion of these sales had never been received by them, and also requiring them to pay to the administrator two-thirds of the amount of partnership debts allowed against the estate, with interest, although it does not appear that any portion of these debts has ever been paid by the administrator. In this there is manifest error.

The law governing the relations of the administrator of a deceased partner to the surviving partners, so far as concerns any questions involved in this case, is well settled. Primarily, the administrator has nothing to do with either the partnership assets or the partnership debts. The surviving partners take the exclusive legal title to the former for the payment of the latter. If any assets remain in their hands after payment of all liabilities, they should account to the administrator for the distributive share of the deceased, which then becomes, for the first time, assets in his hands as administrator. If, however, there is an unreasonable delay on the part of the surviving partners in closing the affairs of the partnership, or if they are wasting the partnership property, it is then the right and duty of the administrator, if the partnership creditors remain inactive, to file a bill, as in the present instance, calling the survivors to account and praying for an appointment of a

receiver and the complete adjustment of the partnership affairs. The administrator himself, if a proper person, may be made receiver, but in that event the court should require him to give a new bond as such. *People* v. *White*, 11 Ill. 350; *Talcott* v. *Dudley*, 4 Scam. 457.

In the case before us there seems to have been such delay on the part of the surviving partners as to justify the administrator in filing this bill. But in the absence of any proof of bad faith, or such degree of negligence as would render the survivors personally liable for all the lumber sold, the complainant could only require them to account personally for the actual proceeds of the sales. The debts due for unpaid sales would pass to the receiver to be collected by him. So also it was error to decree that the defendants should pay the complainant from their private funds two-thirds of the total amount of partnership debts allowed against the estate. There is no proof that the administrator has ever paid one dollar of these debts, nor is there the slightest evidence that the estate is able to pay them. Why, then, should the defendants be required to pay from their private means two-thirds of these debts to the administrator, to be held by him for the benefit of the estate, when, after making such payment, they may be called upon to pay to the partnership creditors the full amount of these same debts? The administrator has no claim against the surviving partners for the benefit of the estate, except for the distributive share thereof after the payment of partnership debts. They are to be first paid out of the partnership assets, to the exclusion of private debts allowed against the estate.

The proper decree in this case will be that a receiver, who may be the administrator upon his giving an additional bond with security, be appointed, and that the surviving partners pay over to him whatever money the court may find has come to their hands, and has not been expended by them in the payment of partnership debts, or in the legitimate expenses of the mill, and that they deliver over to the receiver all evidences of debt and *choses in action* against the debtors of the firm, as also all personal property, if any, belonging to the firm,

and that they be enjoined from collecting any debts due the firm. The court will keep the case on its docket and require a report from the receiver at each term, and if the partnership assets shall be exhausted before the payment of the partnership debts, the administrator, if the estate of John Adams is solvent, will be at liberty to pay the partnership debts allowed against the estate, and to take a decree against the defendants for contribution. The court will ascertain in its decree the amount of partnership money, if any, in the hands of the defendants, and also ascertain specifically the assets of the firm to be delivered to the receiver, and will enforce its decree, if necessary, by the ordinary process of attachment.

*Decree reversed.*