### DAWSON v. PARSONS et al.

(Supreme Court, General Term, Third Department. November 22, 1892.)

1. PARTNERSHIP—DEATH OF PARTNER—RIGHTS OF SURVIVOR.
   The surviving members of a copartnership have the legal title to the firm property, and the right to dispose of its assets only for the purpose of closing the business, not for continuing it. 20 N. Y. Supp. 65, affirmed.

2. SAME—APPOINTMENT OF RECEIVER.
   Where it appears that the surviving partners are conducting the firm business for the purpose of continuing and enlarging it, and not to close it, the court may appoint a receiver for that purpose on application of the legal representatives of the deceased partner. 20 N. Y. Supp. 65, affirmed.

Appeal from special term, Albany county.

Action by Annie I. Dawson, as trustee of Burrett S. Dawson, George Dawson, and Charles Dawson, against John D. Parsons, Nancy M. Dawson, and Caroline E. Ten Eyck, as executrix of Philip Ten Eyck, deceased. Plaintiffs obtained an injunction and the appointment of a receiver. Defendant Parsons appeals. Affirmed.

The following opinion was filed by Mr. Justice HERRICK at special term, July 12, 1892:

"Heretofore there existed in the city of Albany a copartnership doing business under the firm name of Weed, Parsons & Co., consisting of Thurlow Weed, Philip Ten Eyck, George Dawson, and John D. Parsons. That, apart from the real estate. said partnership was divided into forty shares or parts, of which Thurlow Weed owned five shares. George Dawson fourteen shares, Philip Ten Eyck seven shares, and the defendant John D. Parsons fourteen shares. The profits and losses of the said copartnership were to be divided and borne in the proportion of the respective shares or parts. In March, 1873, Thurlow Weed sold and transferred his interest to Thurlow Weed Barnes. In February, 1883, George Dawson died intestate, leaving, him surviving. the defendant, his widow, Nancy M. Dawson, and his son, Burrett S. Dawson. his only next of kin and heirs at law. Letters of administration upon the estate of George Dawson were duly issued to Nancy M. Dawson, administratrix, and Hamilton Harris, as administrator. In June, 1883, the said administratrix and administrator presented their final account to the surrogate of Albany county, which was passed and allowed, and a decree to that effect entered in the surrogate's court. In and by that decree it was adjudged that the interest of the said George Dawson in the copartnership of Weed, Parsons & Co. be divided between Burrett S. Dawson, his son, and Nancy M. Dawson, his widow, by giving nine and one third fortieths interest of said copartnership property to Burrett S. Dawson, and four and two thirds fortieths to Nancy M. Dawson; and such interests were transferred to them accordingly. Such proceedings were afterwards had that the interest of Burrett S. Dawson in said copartnership and real estate was transferred to the plaintiff as trustee. That in November, 1886, the interest of said Thurlow Weed Barnes in said copartnership was negotiated for by the defendant Parsons, and purchased, as is stated, for the benefit of those interested in said concern. Notes were given in the name of Weed, Parsons & Co. for the interest of said Thurlow Weed Barnes to the amount of $20,000, which notes have been paid from time to time, until now there remain but two outstanding,—one for the sum of $1,500, and one for the sum of $2,000. On the 23d day of March, 1891, Philip Ten Eyck died, leaving a last will and testament, wherein Caroline E. Ten Eyck was named executrix of his estate, which will had been duly admitted to probate by the surrogate of Albany county.

"The defendant John D. Parsons seems for many years to have been the managing man of the said copartnership, and to have received a salary for his services in addition to his share of the profits; such salary from 1871 to the year 1884 being the sum of some $2,600 per year. In 1884 the defendant Parsons claims that an arrangement was entered into between himself and those interested in the copartnership business, by which he was to receive $7,000 per year for his services, and he has since been drawing that salary. The plaintiff alleges that she never authorized or consented to any such agreement. The son of the defendant John D. Parsons is also employed at a salary of about $3,000 per year, and a son-in-law at a salary ranging from $10 a week in May, 1891, when he entered such employment, to $20 a week since March, 1892. The business of said copartnership was and continues to be great in value and very large in amount, necessitating the use of a large plant, and the employment of much capital. Since the death of George Dawson it does not appear that any effort has been made to close up the business, but rather to continue and expand it. New presses have been bought at large expense. and, as before stated, the interest of Barnes purchased for the benefit of the remaining persons in interest. In 1871 the building and plant of the firm were practically destroyed by fire, and to rehabilitate the concern about $160,000 was borrowed, some $60,000 being advanced by individual members of the firm, $15,000 thereof by the defendant Nancy M. Dawson. $104,-000 of that amount was still due at the time of the death of George Dawson. Since his death over $37,000 of such indebtedness has been paid to Nancy Dawson, Annie I. Dawson, Philip Ten Eyck and his executors. Thurlow Weed and his transferee, and John D. Parsons, in addition to the interest upon the respective loans to the firm. Nothing has been paid to any of the partners or persons holding the interest of partners on account of the earnings or profits of said firm since the death of George Dawson, except a weekly allowance that was paid for a time to the plaintiff, and which has amounted in the aggregate to some $6,200. Such weekly payments ceased some time since. The copartners, in addition to the personal property of the firm, owned real estate which is claimed by the plaintiff to be of the assessed value of over $100,000, and its actual value much larger, in which real estate she is entitled to a two-fifths interest. The value of the real estate, as claimed by the plaintiff, is denied by the defendants, but the defendants do not assert what its real value is. In some respects the business of

the concern has been conducted, since the death of George Dawson, and since the death of Philip Ten Eyck, as if the partnership still continued; the personal representatives of such deceased copartners taking their place in the copartnership. The business has been carried on in the old firm name, and suits have been brought against debtors of the concern wherein Thurlow Weed Barnes, Nancy M. Dawson, and Burrett S. Dawson were joined with Parsons and Ten Eyck as parties plaintiff. And it is claimed and alleged, and not denied by the defendants, that much new business has been secured and new contracts entered into, and that none of the business now being done was on hand. and none of the contracts for business now existing were in existence or executed, prior to the death of George Dawson. The plaintiff claims and alleges that the defendant John D. Parsons is continuing and managing and controlling said business for his own benefit and that of his family. That the property of the firm has greatly depreciated, and is still depreciating, in value. That she is not, and has not for a long time past, been receiving anything from the business, and that she can obtain nothing from the defendant; and she asks for an accounting and the appointment of a receiver, and that the business of the late copartnership be wound up. The defendants Nancy M. Dawson and Caroline E. Ten Eyck also ask for an accounting, but, together with the defendant Parsons, protest against the appointment of a receiver, claiming that it will be ruinous to the interests of the concern. The defendant Parsons claims that he is entitled to the legal custody and control of the business and property of the late firm as surviving partner, and that he be permitted to close up said business without any interference upon the part of the court.

"Various matters have been discussed upon this motion which I deem unnecessary for me to touch upon, or express any opinion in regard to at this time. They will be passed upon on the trial of the case. There can be no question but that upon the death of one member of a copartnership the surviving members become the legal owners of the assets, and have the exclusive right to manage and dispose of them in closing up the affairs of the copartnership. Williams v. Whedon, 109 N. Y. 333, 16 N. E. Rep. 365; Durant v. Pierson, 124 N. Y. 444, 26 N. E. Rep. 1095. While the surviving members of a copartnership have the legal title to copartnership property, and the right to dispose of its assets, they only have the title and right of disposition for the purpose of closing up the copartnership business, not for the purpose of continuing the business. They cannot keep possession of the property indefinitely. The legal representatives of the deceased copartners have a right to an accounting by the survivors, and payment over to them of their proportionate share of the assets after payment of the firm debts. However strong may be the desire of the surviving partners to continue the business, the legal representatives of the deceased partner have a right to have the business closed up within a reasonable time, and the capital belonging to them cannot be continued in the business to gratify the desire or promote the interests of the surviving member; and while, under ordinary circumstances, the court will not interfere with the control of the copartnership property by its surviving members, or with their management of the firm assets, yet it seems to me that it must be self-evident that there must be power in the court at some time to interfere and cause a final settlement of the copartnership business; and when it is apparent that the surviving member or members of a copartnership are conducting the business, not for the purpose of closing it up, but to expand, enlarge, and continue it, that it then becomes proper for the court to interfere. It is now over nine years since the copartnership of Weed, Parsons & Co. was dissolved by the death of George Dawson, and over a year since the death of Philip Ten Eyck, and the papers used on this motion on behalf of the defendants disclose no effort to close up the business, but, on the contrary, efforts to continue and increase it, and the expenditure of money and the incurring of obligations for that purpose. The arguments by counsel before me against the appointment of a receiver have been largely upon the ground that such action would injure the business of the concern, and proceeded upon the assumption that the business was to be, and should be, continued indefinitely. It may be that it would be better for all concerned that the business should be continued, but neither the defendants nor the court can coerce the plaintiff into leaving the property of which she is the trustee remaining in the business to take all its risks and hazards. And when, as in this case, there are charges, which cannot be determined on a motion, of mismanagement, or depreciation in the value of the property, and when the survivor is deriving a large income from the business, and the legal representatives of the deceased partner, now, I do not think the court would be justified in withholding its aid in bring-

ing about a speedy settlement of the copartnership business. If by the manner in which the business has been conducted the plaintiff has, in fact, become a partner with the defendants, still she is entitled to have such partnership terminated, is entitled to an accounting, and, for the purpose of having the business closed up, to the appointment of a receiver for that purpose. If the defendants desire the business to be continued, provision may be made for that purpose. Let, therefore, an order be entered appointing a receiver of the property and effects of the late firm of Weed, Parsons & Co., as asked for by the plaintiff, and restraining the defendant John D. Parsons from further conducting or interfering with the business or property of said copartnership, unless on or before the 19th day of July, 1892, he execute a bond in the sum of $60,000, with two or more sureties, to be approved by a justice of this court, conditioned to pay the plaintiff any sum found to be due her upon the trial and accounting to be had in this action. Costs of this motion to abide the event of the action. The order is granted without prejudice to the right of the plaintiff in the future to apply for the appointment of a receiver absolutely."

Argued before MAYHAM, P. J., and PUTNAM and HERRICK, JJ.

Moak & Buchanan, (Charles J. Buchanan, of counsel,) for appellant.

Edward J. Meegan, (Jacob H. Clute, of counsel,) for respondent.

MAYHAM, P. J.    We think that these orders should be affirmed for the reasons stated in the opinion of the learned justice at special. term. Order affirmed, with $10 costs and printing disbursements.

PUTNAM, J., concurs.    HERRICK, J., not acting.