[Civil No. 2410.  Filed November 21, 1925.]

[240 Pac. 1027.]

HATTIE L. MOSHER, as Surviving Partner of the CITY ICE DELIVERY COMPANY, a Co-partnership, Appellant, v. CARRIE A. LOUNT, Individually and as Executrix of the Last Will and Testament of WILLIAM B. LOUNT, Deceased, Appellee.

1. PARTNERSHIP—SURVIVING PARTNER ENTITLED TO TAKE POSSESSION OF PARTNERSHIP ASSETS ON DEATH OF COPARTNER ONLY FOR WINDING UP THE BUSINESS.—Surviving partner *held* entitled, under Civil Code of 1913, paragraph 970, to take possession of assets of partnership on death of her copartner only to wind up the business, which property she held, not as her own, but as a trustee for benefit of both herself and heirs of deceased partner; she being amenable to a court of equity for her actions in same manner as any other trustee.

2. PARTNERSHIP—COURT OF EQUITY MAY PLACE RECEIVER IN CHARGE OF PARTNERSHIP PROPERTY, IF IN DANGER OF DISSIPATION OR DESTRUCTION.—A surviving partner being but a trustee, if partnership property is in great danger of being dissipated or destroyed, court of equity has power, in absence of statute to contrary, to place receiver in charge thereof, for preservation of the property and proper carrying out of the trust.

3. PARTNERSHIP—RECEIVER HELD PROPERLY APPOINTED FOR PARTNERSHIP, WHERE PROPERTY IN DANGER OF BEING DISSIPATED IF SURVIVING PARTNER CONTINUED IN POSSESSION OF THE BUSINESS.—

1.  See 20 R. C. L. 1003.
2.  See 23 R. C. L. 30.

Receiver for partnership *held* properly appointed on petition of executrix of deceased partner, where, if surviving partner were allowed to continue in possession of the business, partnership property was in great danger of being dissipated, and Civil Code of 1913, paragraph 970, providing that surviving partner may be compelled to render account to probate court, not furnishing adequate remedy at law to executrix of deceased partner.

4. APPEAL AND ERROR—RECEIVERS—APPOINTMENT OF RECEIVER WITHIN DISCRETION OF COURT, SUBJECT ONLY TO REVIEW BY SUPREME COURT FOR ABUSE.—Appointment of receiver, is matter of discretion in lower court, subject only to review by Supreme Court for abuse.

5. PARTNERSHIP—LOWER COURT PROPERLY EXERCISED ITS DISCRETION IN APPOINTING RECEIVER FOR PARTNERSHIP.—Trial court properly exercised its discretion in appointing receiver for partnership on petition of executrix of deceased partner, where it appeared that, if surviving partner were allowed to continue in possession of the business, partnership property was in great danger of being dissipated.

See (1) 30 **Cyc.**, pp. 621, 622.   (2) 30 **Cyc.**, p. 623.   (3) 30 **Cyc.**, p. 649.   (4) 4 **C. J.**, p. 804; 34 **Cyc.**, p. 19.   (5) 30 **Cyc.**, p. 649.

APPEAL from a judgment of the Superior Court of the County of Maricopa. Joseph S. Jenckes, Judge. Affirmed.

Mr. W. T. Sprowls, for Appellant.

Messrs. Chalmers, Stahl, Fennemore & Longan and Mr. Thomas G. Nairn, for Appellee.

LOCKWOOD, J.—William B. Lount, hereinafter called decedent, and Hattie L. Mosher, his sister, hereinafter called defendant, were members of the partnership known as the City Ice Delivery Company, of Phoenix, Arizona, hereinafter called the company. Decedent owned eleven-sixteenths interest in the company, and defendant owned and now owns five-sixteenths interest therein. During the lifetime of the decedent he was the sole manager of the company and handled all its business; defendant taking

no active part therein. Decedent died on August 31, 1924, leaving an estate consisting of real and personal property, and a last will and testament, by the terms of which Carrie A. Lount, his wife, hereinafter called plaintiff, was named as executrix and sole heir. The will was duly admitted to probate on October 14, 1924, and plaintiff qualified as executrix, and letters testamentary were duly issued to her.

Immediately after the death of decedent, defendant herein, being the surviving partner in the company, entered upon and assumed the supervision, management and control of all its operations and property, and ever since then has so continued. Practically the entire business of the company consists in the retailing and delivering of ice to various patrons in the city of Phoenix. Very little of the ice so sold is manufactured by the company itself, but it buys most of its supply from the Crystal Ice & Cold Storage Company a corporation, hereinafter called the corporation. At the time defendant took control of the company, it was employing from ten to fourteen route men or drivers, whose duty it was to deliver ice to the patrons of the company on their respective routes. The business was an extremely profitable one, and supplied practically fifty per cent of the entire retail ice consumption of the city of Phoenix.

Some time after defendant assumed the management of the company, various difficulties arose between her and the company employees, and on February 21st, 1925, the large majority of the delivery men quit the services of the company and entered into the employment of the corporation. Up to this time the latter had not been engaged in the business of retailing the ice manufactured by it, but, immediately upon the difficulty culminating as above, it placed the route drivers who left the employment of the company upon wagons of its own and began an

active competition with the company for the retail ice business of Phoenix.

Plaintiff herein then filed this suit in the superior court of Maricopa county, setting up the above facts, and alleging further that the nature of the business was such that its success was to a very great extent due to the personality and experience of the route drivers, on account of the fact that they generally controlled the large bulk of the retail patronage; that defendant, during the six months she had conducted the affairs of the company, had antagonized many of its customers and most of its employees, to such an extent that its business was being ruined, and that, if she were allowed to continue as manager, the goodwill of the company, which was by far its most valuable asset, would be totally lost, and the value of the company would be almost wholly destroyed; that the damage was being caused solely by the fact that defendant was incompetent to handle the business, on account both of her inexperience and inability to get along harmoniously with its employees; that the men who had left the service of the company would all return in case defendant was removed from its management; that the corporation was willing under those circumstances to give up the retail delivery of ice and go back to the old basis; and that the value of the company as an asset would be practically restored. It was further alleged that defendant had not attempted to wind up the affairs of the partnership, but was continuing to carry on the business permanently, as though it were her own, without regard to the rights of the plaintiff as executrix and heir of William B. Lount.

The prayer of the complaint was for an accounting, and that a receiver be appointed for the business, to take charge of and settle the affairs of the partnership, and that defendant be enjoined from interfering

in the management thereof, and various affidavits were filed in support of the allegations of the complaint.

Defendant demurred generally and specially, setting up that plaintiff had an adequate remedy at law, under paragraph 970, Civil Code, Revised Statutes of Arizona of 1913. An answer was also filed, admitting the allegations of the complaint in regard to the ownership of the business, and that defendant had taken possession thereof as surviving partner, but denied that she was not making an attempt to settle up the affairs of the partnership; alleging that she was endeavoring to close the business up as required by law, as soon as possible, but that various employees of the company had conspired together to prevent her managing it as surviving partner and closing its affairs in the proper manner, and particularly that the difficulty in its management, since she had taken charge thereof, was caused by an effort of plaintiff and her brothers, who were at the time of the death of the decedent in active charge of the affairs of the company, to wrest its control from defendant, for their own financial gain and her loss. She further denied that she was not capable of properly handling the business, and alleged that, on the contrary, during her management it was in a prosperous condition, except in so far as it might have been injured by plaintiff herself and her brothers as aforesaid. There were affidavits also filed in support of the allegations of the answer.

The matter came on for hearing on the special and general demurrers to the complaint, which were overruled, and the court ordered that a receiver be appointed. Defendant thereupon appealed from the order appointing a receiver, and filed a supersedeas bond in the sum of $25,000. The assignments of errors are threefold: First, that the court erred in

not sustaining the general demurrer; second, that the court erred in not sustaining the special demurrer; and, third, that the court erred in appointing a receiver.

We will, however, consider the case as a whole, discussing the separate assignments only as they may be necessary for this purpose. Paragraph 970, *supra,* reads as follows:

"970. When a partnership exists between the decedent, at the time of his death, and any other person, the surviving partner has the right to continue in possession of the partnership and to settle its business, but the interest of the decedent in the partnership must be included in the inventory, and be appraised as other property. The surviving partner must settle the affairs of the partnership without delay, and account with the executor or administrator, and pay over such balances as may from time to time be payable to him in right of the decedent. Upon the application of the executor or administrator, the court or judge may, whenever it appears necessary, order the surviving partner to render an account, and in case of neglect or refusal, may, after notice, compel it by attachment; and the executor or administrator may maintain against him any action which the decedent could have maintained."

It will be seen by an examination of this section that a surviving partner has the right to take possession of the assets of the partnership, and that they do not pass into the possession of the executrix of the deceased partner. Defendant, therefore, was fully justified under the law in taking possession of the assets of the company upon the death of her brother. Such possession, however, was not the general possession of the managing partner of a going business, but was for the specific purpose of winding up the business, and that only. As was said by this court in the case of *Franklin* v. *Trickey,* 9 Ariz. 282,

1 Ann. Cas. 1105, 80 Pac. 352, in discussing the rights and duties of a surviving partner and referring to a case when the administrator of the surviving partner, who had later himself died, was in possession of the assets of the partnership:

"The administrator holds it, not as a part of such estate, but as Chapin himself held it, in trust; and he is accountable as a trustee for the completion of such trust, . . . "

—Chapin being the surviving partner in the case cited. Defendant therefore held the property of the company, not as her own, but as a trustee for the benefit of both herself and the heirs of her deceased brother, and was amenable to a court of equity for her actions in the same manner as any other trustee.

As between herself and plaintiff, as executrix, defendant was, of course, entitled to the possession and management of the company so long, and only so long, as it was necessary to hold it for the purpose of winding up the affairs of the partnership and paying over its assets in accordance with law, and this would not carry with it the right to continue the business any longer than reasonably necessary for the purpose of the trust. Now it is axiomatic that in any trusteeship, if the property is in great danger of being dissipated or destroyed, a court of equity has power, in the absence of a statute to the contrary, to place a receiver in charge thereof, for the preservation of the property and the proper carrying out of the trust. *Calhoun* v. *King,* 5 Ala. 523; *Turnbull* v. *Prentiss Lbr. Co.,* 55 Mich. 387, 21 N. W. 375; 2 Story's Equity, par. 836. Nor can we see, since a surviving partner is but a trustee, where the law is any different in defendant's case from that of any other person in a fiduciary capacity. *Emerson* v. *Senter,* 118 U. S. 3, 30 L. Ed. 49, 6 Sup. Ct. Rep. 981; *Painter et al.* v.

*Painter et al.,* 4 Cal. Unrep. 636, 36 Pac. 865; *Dawson v. Parsons et al.,* 66 Hun, 628, 21 N. Y. Supp. 212; *Ekberg* v. *Lancaster,* 105 Neb. 510, 181 N. W. 160; *Russell* v. *McCall,* 141 N. Y. 437, 38 Am. St. Rep. 807, 36 N. E. 498.

Neither do we think the last sentence of paragraph 970, *supra,* providing that the surviving partner may be compelled to render an account to the probate court, is under all circumstances a full, complete and adequate remedy at law. If the charge were merely that the defendant was not paying over the profits of the business as they accrued, or even that she was not closing up the partnership as promptly as possible, there might be merit in this position; but the gist of the complaint in this action is, not so much a failure to account, but an allegation that, if defendant is allowed to continue in the possession of the business, there will be nothing left to account for. We are of the opinion that the complaint herein stated a good cause of action for the appointment of a receiver, and the demurrers were properly overruled.

The next question which arises is whether or not the showing made at the hearing was such as to justify the appointment. Substantially speaking, the defense set up was that any trouble which arose, likely to injure the value of the company, was caused by a conspiracy on the part of the plaintiff and her agents to oust the defendant from her rightful control thereof. "He who seeks equity must do equity," and "he who comes into equity must come with clean hands," are fundamental principles, and if it be true that such a conspiracy did exist, and that any depreciation in the value of the company was caused thereby, certainly no court of equity would intervene to protect plaintiff against the result of her own iniquity.

This, however, is primarily an issue to be determined by the trial court. So far as the record shows us, there were affidavits' presented by both parties on the motion for a receiver. These, as well as the verified complaint and answer, were in sharp conflict, and we cannot say the lower court was not justified in finding therefrom, first, that the value of the company was being, and would continue to be, rapidly depreciated, so long as defendant had the management and control thereof; and, second, that plaintiff was in no way responsible for such a condition. If those two facts be true, it is immaterial as to whether this condition arose from defendant's fault or merely from her misfortune. The chief duty of the trustee and the court is to preserve the value of the trust fund, and if the only way to do that is to take from defendant the management and control given by the statute, it is the duty of the trial court to follow that course.

This being a matter of discretion, subject only to review by us for abuse, and it not appearing from the record affirmatively that the trial court did not properly exercise such discretion, its judgment is affirmed.

McALISTER, C. J., and ROSS, J., concur.