NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

DIANA R. SHAFFER, et al., *Plaintiffs/Appellants*,

*v.*

PROCACCIANTI AZ II, L.P., et al., *Defendants/Appellees*.

R.L. WHITMER, et al., *Plaintiffs/Appellants*,

*v.*

HILTON CASITAS COUNCIL OF CO-OWNERS, et al.,
*Defendants/Appellees*.

---

PROCACCIANTI AZ II, L.P., *Intervenor/Appellee*.

---

COLLEEN LONDON, et al., *Plaintiffs/Appellants,*

*v.*

HILTON CASITAS COUNCIL OF HOMEOWNERS, *Defendant/Appellee*.

Nos. 1 CA-CV 16-0628
1 CA-CV 16-0629
1 CA-CV 16-0654
(Consolidated)
FILED 5-22-2018

---

Appeal from the Superior Court in Maricopa County
Nos. CV2012-000363
CV2012-051066
(Consolidated)
No. CV2015-053091
No. CV2016-050379
The Honorable John R. Hannah, Judge

**AFFIRMED**

---

COUNSEL

Porter Law Firm, Phoenix
By Robert S. Porter
*Counsel for Plaintiffs/Appellants Diana R. Shaffer, LPM Holdings, LLC, Zadok and Hana Eli, Colleen London, R.L. Whitmer*

Spencer Fane, LLP, Phoenix
By Andrew M. Federhar, Jessica Anne Gale
*Counsel for Defendant/Appellee/Intervenor Procaccianti AZ II, L.P.*

Hill, Hall & DeCiancio, PLC, Phoenix
By R. Corey Hill, Ginette M. Hill, Christopher Robbins
*Counsel for Defendant/Appellee Hilton Casitas Council of Homeowners*

Chester & Shein, P.C., Scottsdale
By David E. Shein, Sonia M. Phanse
*Co-Counsel for Plaintiff/Appellant DRL Enterprises, Inc.*

Roeser Bucheit & Graham, LLC, Chicago, Illinois
By Charles S. Bergen, John E. Bucheit, both appearing *Pro Hac Vice*
*Co-Counsel for Plaintiff/Appellant DRL Enterprises, Inc.*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Kent E. Cattani joined.

---

**W I N T H R O P**, Judge:

¶1　　　　Diana R. Shaffer ("Shaffer"), LPM Holdings, LLC ("LPM Holdings"), Zadock and Hana Eli (the "Elis"), R.L. Whitmer ("Whitmer"), Colleen London ("London"), and DRL Enterprises, Inc., ("DRL") (collectively, "Appellants") raise numerous arguments on appeal against Procaccianti AZ II, L.P. ("Procaccianti") and Hilton Casitas Council of Co-Owners and Hilton Casitas Council of Homeowners (the "HOA").[1] For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2　　　　This consolidated appeal arises from a 1970 ground lease and sublease of twenty acres (the "Property") between the Small Family Trust and the predecessor-in-interest to Procaccianti (the "Hotel").[2] The Hotel subsequently divided the Property into a 12-acre resort and an 8-acre condominium complex. The condominium complex was further divided into 29 tracts and sold as 29 individual casitas. In 1972, the casita owners entered a sublease (the "Sublease") with the Hotel, which required the casita owners to pay a ground rent (calculated on the consumer price index) on the casitas. The Sublease additionally provided that after 1975, the ground rent be recalculated every five years.

¶3　　　　In 1999, the Hotel wanted to redevelop and rezone the resort portion of the Property, and accordingly sought to amend the Sublease (the "1999 Amendment"). The 1999 Amendment proposed to fix the casita owners' ground rent at $323 per month. The 1999 Amendment additionally authorized the HOA to act for and represent the casita owners in ground rent negotiations, and changed the method of ground rent calculation by providing that if the HOA and the Hotel could not agree on the amount of

---

[1]　　　Although in various motions before the superior court, as well as on appeal, the HOA has been referred to as the Hilton Council of Co-Owners and the Hilton Casitas Council of Homeowners, for the purposes of this appeal, the Hilton Council of Co-Owners and the Hilton Casitas Council of Homeowners are the same entity and shall be referred to as the HOA.

[2]　　　For ease of reference both Procaccianti and Procaccianti's predecessor-in-interest are referred to as the Hotel.

ground rent, they would use an appraiser to calculate the ground rent. The 1999 Amendment was approved by the Hotel and the casita owners.

¶4            Pursuant to the 1999 Amendment the first rent adjustment was to take effect on October 1, 2003; however, the Hotel and the Small Family Trust continued to dispute the Property's total ground rent, and the rent adjustment for the casitas did not go into effect. In 2005, the Small Family Trust and the Hotel went to arbitration, and an arbitrator determined the total amount of ground rent and the appropriate division of ground rent between the Hotel and the casita owners. The arbitrator provided that the Hotel would pay 52.7% and the casita owners pay 47.3% of the Property's total ground rent. After arbitration, however, the Hotel and the HOA came to a new agreement, which provided that the Hotel pay 60% and the casita owners pay 40% of the total ground rent. Pursuant to this agreement, each casita owner would owe $8,502.00 per year, dating back to 2003, resulting in a $708.50 per month ground rent obligation. On January 12, 2006, the HOA held a special meeting for the casita owners to approve the new ground rent allocation (setting each individual unit's monthly ground rent at $708.50). Twenty-four out of twenty-nine casita owners voted to approve the amended Sublease.

¶5            Shaffer, LPM Holdings, and DRL (collectively, "Shaffer Appellants") subsequently sued the HOA, alleging that, for procedural reasons, the January meeting was invalid (the "2011 litigation"). At the same time, the Hotel sent the casita owners a second amended sublease (the "2006 Amendment"), memorializing the agreement from the January 2006 special meeting. The 2006 Amendment provided that the casita owners would pay 40% of the total ground rent on the Property, resulting in a monthly ground rent of $708.50 per unit. Twenty-four out of twenty-nine casita owners, voting by mail, signed and approved the 2006 Amendment.

¶6            During the 2011 litigation, Shaffer Appellants entered a settlement agreement with the HOA. The settlement agreement provided that, contrary to the 1999 Agreement, which assigned sole authority to the HOA to negotiate ground lease issues, the HOA would not interfere with Shaffer Appellants' individual negotiations regarding ground rent with the Hotel. The settlement agreement also provided for a release of all claims against the HOA. Pursuant to the settlement agreement, Shaffer Appellants and the HOA entered a stipulated final judgment, in which the superior court (Judge Eileen Willett) found:

> The Court finds from the undisputed facts set forth by the
> parties that the actions of the purported Board of Directors

taken at the January 12, 2006 meeting of the Scottsdale Hilton Casitas Homeowners Association (the "Association"[]) were not in compliance with the Declaration and Bylaws. The Court finds as a matter of law that the Declaration and Bylaws constituted the governing authority over the actions of the Association. A quorum was not present on January 12, 2006 for the meeting nor were all the votes cast by record owners. Absentee ballots are not the legal equivalent of votes by proxy and therefore were not in compliance with the requirements of the Declaration and Bylaws. The Association consequently did not have legal authority to take the action it did, and Plaintiffs are not bound by the Association's decision to execute the Second Amendment to the Sublease as a matter of law. Nor can a subsequent majority of owners cure by ratification as to Plaintiffs the void vote of January 12, 2006. Defendants have no authority to bind Plaintiffs in this instance. . . . the January 12, 2006 meeting, and any action taken at that meeting, was void, invalid and unenforceable.

¶7        The superior court additionally noted that the HOA had been known as the Hilton Casitas Council of Co-Owners, and had been incorrectly identified during the litigation as the Hilton Casitas Counsel of Homeowners. The court then found that the "Scottsdale Hilton Casitas Homeowners Association" was the correct designation for the subject HOA. No appeal was taken from this final judgment (the "Willett Judgment").

**1 CA-CV 16-0628**

¶8        In January 2012, Shaffer Appellants sued the Hotel (CV2012-051066), arguing the Hotel breached the 1999 Amendment by failing to appoint an appraiser to determine the ground rent. The Hotel counterclaimed for breach of contract and unjust enrichment. The Elis also filed a similar but separate lawsuit against the Hotel and the HOA for breach of contract (CV2012-000363). At the Hotel's request, the two cases were consolidated. The parties cross-moved for summary judgment and the court heard oral arguments on the motions. The court granted summary judgment in favor of the Hotel against the Shaffer Appellants, finding that, by entering the 2011 settlement agreement prohibiting the HOA from negotiating the casita owners' share of the ground rent, the Shaffer Appellants breached the express terms of the 1999 Amendment. The court, however, declined to rule on the Hotel's claims for declaratory judgment and the question of the HOA's authority, leaving these issues to

be tried by a jury. The court additionally denied the Hotel's motion for summary judgment as it related to the Elis, finding there were questions of fact to be tried.

¶9 The case proceeded to trial in February 2016, in order for the jury to determine whether the 2006 Amendment was valid,[3] whether the HOA was authorized to act on behalf of the casita owners, and, if applicable, the amount of damages.[4] The jury found in favor of the Hotel on all claims and determined that Appellants were required to pay a monthly ground rent of $708.50, implicitly finding the 2006 Amendment was valid. The jury also calculated separate damage awards in favor of the Hotel for back rent.[5] The court awarded the Hotel its attorneys' fees in the amount of $459,000.00 and held Shaffer, LPM Holdings, DRL, and the Elis jointly and severally liable for the fee award.

## 1 CA-CV 16-0629

¶10 In separate litigation (CV2015-053091), Whitmer, London, and Shaffer (collectively, "Whitmer Appellants") in August 2015 sued the HOA, and requested the superior court appoint a receiver to act in place of the HOA. The Hotel moved to intervene and transfer the case to the judge who was presiding over the 2012 case. The court granted the Hotel intervenor status and transferred the case. The court ultimately denied Whitmer Appellants' request to appoint a receiver, finding the HOA was not incapacitated, and, alternatively, even if it were, the remedy would not be to appoint a receiver, but for the Hotel to assume control and

---

[3] The superior court's minute entry states that "while Hilton Casitas is not barred by issue preclusion to assert that a 'vote by pen' is a valid procedure, the intent and effect of the putative vote(s) are questions of fact. Toward that end, the Court finds that the 1999 Amendment is enforceable under this doctrine because all casita owners signed it. Supermajority or not, the 2006 Amendment was not ratified by all casita owners and the effect of the signing remains a question of fact." The Final Jury Instructions also included an instruction on the vote by pen.

[4] The court had previously resolved all claims involving the HOA. Accordingly, the jury only reviewed the consolidated claims against the Hotel and the Hotel's cross-claims against Shaffer Appellants and the Elis.

[5] The jury assessed damages against Shaffer in the amount of $80,662.12; against LPM Holdings in the amount of $62,998.90; against DRL in the amount of $60,535.76; and against the Elis in the amount of $42,510.00.

management of the HOA.  The court then dismissed Whitmer Appellants' claims with prejudice and awarded the Hotel its attorneys' fees and costs.

**1 CA-CV 16-0654**

**¶11**        In January 2016, Whitmer and London (collectively, "London Appellants") sued the HOA (CV2016-050379), seeking a declaration that the "Hilton Casitas Council of Homeowners," an Arizona non-profit corporation, did not replace the "Hilton Casitas Council of Co-Owners," which was established in 1972.  The court denied the motion, finding London Appellants had previously raised this claim numerous times, and that the Hilton Casitas Council of Homeowners was lawfully organized and had lawful authority to act on the behalf of the casita owners.  The court then dismissed the action with prejudice.

**¶12**        Appellants appeal from the 2012, 2015, and 2016 cases.  We consolidated these cases, and have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2016) and 12-2101(A)(1) (2016).[6]

**ANALYSIS**

**¶13**        Appellants raise numerous issues related to the 2012, 2015, and 2016 cases on appeal.  We address each argument in turn.[7]

---

[6]        We cite the current versions of all applicable statutes because no revisions material to this decision have occurred.

[7]        As an initial matter, the HOA argues that we lack jurisdiction to review Appellants' arguments because they are challenging the sufficiency of the evidence.  *See* A.R.S. § 12-2102(C) (Supp. 2017).  We disagree.

I.      *Claims Raised by Appellants Shaffer, LPM Holdings, the Elis, Whitmer, and London*[8]

        a.      *Preclusive Effect of the August 2011 Judgment ("Willett Judgment")*

**¶14**      Appellants initially argue that the superior court erred by refusing to give preclusive effect to the August 22, 2011 Willett Judgment. Appellants construe the Willett Judgment as conclusively deciding two issues: (1) the status of the HOA, and whether the incorporated HOA was authorized to act on behalf of the casita owners, and (2) the validity of the 2006 Amendment.  We disagree.

**¶15**      We review *de novo* whether a certain issue is precluded by a previous judgment.  *Campbell v. SZL Props., Ltd.*, 204 Ariz. 221, 223, ¶ 8 (App. 2003).  If applicable, issue preclusion binds a party to a previously rendered decision.  *Id.* at ¶ 9.  Issue preclusion, however, only applies if: "(1) the issue was actually litigated in the previous proceedings, (2) the parties had a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits was entered, (4) resolution of the issue was essential to the decision, and (5) there is common identity of the parties." *Id.* (citing *Garcia v. Gen. Motors Corp.*, 195 Ariz. 510, 514, ¶ 9 (App. 1999)).  We construe the application of issue preclusion narrowly, and confine our application of issue preclusion to "situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding."  *S. Point Energy Ctr., LLC v. Ariz. Dep't of Revenue*, 241 Ariz. 11, 14, ¶ 9 (App. 2016) (citation omitted).

**¶16**      Appellants have failed to prove the first requirement for issue preclusion—that the status of the HOA and the validity of the 2006 Amendment—were "actually litigated and determined by a valid and final judgment."  *Food for Health Co., Inc. v. 3839 Joint Venture*, 129 Ariz. 103, 105 (App. 1981) (citation omitted).

**¶17**      The Willett Judgment focused on the narrow question of whether the January 2006 special meeting between the HOA and the casitas

---

[8]      Appellants Shaffer, LPM Holdings, the Elis, Whitmer, and London are represented by the same counsel.  DRL separately appeals, but joins the pertinent arguments raised by Shaffer, LPM Holdings, the Elis, Whitmer, and London.  Given this, we refer generally to "Appellants" to encompass the arguments that counsel raises on appeal without specifically referring to which Appellants are implicated by which arguments.

owners, and the subsequent vote to approve the amendments to the Sublease at that special meeting, was valid. The Willett Judgment determined, by stipulation, that the special meeting was invalid and voided the casita owners' vote at such meeting. *Cf. In re Bowen*, 198 B.R. 551, 556 (B.A.P. 9th Cir. 1996) (finding that stipulated judgments generally are not entitled to preclusive effect unless there was "substantial participation in an adversary contest in which the party is afforded a reasonable opportunity to defend himself on the merits but chooses not to do so" (citation omitted)). The litigation subsequent to the Willett Judgment did not seek to readdress the effect of the January special meeting nor seek to reinstate the casita owners' vote at that meeting. Moreover, the narrow findings of the Willett Judgment are irrelevant to the parties' subsequent litigation and did not bar the court from entering findings regarding the status and authority of the HOA and the validity of the 2006 Amendment in the 2012, 2015, and 2016 cases.

### b. *Interpretation of the Willett Judgment*

**¶18** Alternatively, Appellants argue that the superior court misinterpreted the Willett Judgment, and, urge their own interpretation—that the Willett Judgment voided the 2006 Amendment, and thus, Appellants are not required to pay $708.50 per month in ground rent.

**¶19** We review *de novo* the interpretation of a stipulated judgment. *Citibank (Ariz.) v. Bhandhusavee*, 188 Ariz. 434, 435 (App. 1996). A stipulated judgment functions as a contract between two parties; thus, in interpreting a stipulated judgment, we look to principles of contract interpretation. *See ASH, Inc. v. Mesa Unified Sch. Dist. No. 4*, 138 Ariz. 190, 192 (App. 1983). In general, we interpret contract terms consistent with their plain and ordinary meaning. *Am. Cas. Co. of Reading, PA v. D.L. Withers Constr., L.C.*, 204 Ariz. 382, 384, ¶ 7 (App. 2003).

**¶20** The Willett Judgment, in relevant part, stated that:

> The [HOA] consequently did not have legal authority to take the action it did, and Plaintiffs are not bound by the [HOA's] decision to execute the Second Amendment to the Sublease as a matter of law. Nor can a subsequent majority of owners cure by ratification as to Plaintiffs the void vote of January 12, 2006. Defendants have no authority to bind Plaintiffs in this instance. . . . *the January 12, 2006 meeting, and any action taken at that meeting, was void, invalid and unenforceable*. (emphasis added).

9

¶21      The terms of this judgment are clear by their plain and ordinary meaning. The HOA and the casita owners were not allowed to approve the amendments to the Sublease at the January 12, 2006 meeting because there was no legal quorum. Thus, the actions taken *at the January meeting* were void. The Willett Judgment, however, did not make any findings as to the potential validity of future actions that the HOA and the casita owners might take relative to amending the Sublease. Contrary to Appellants' contention, the Willett Judgment did not conclusively void the casita owners' obligations to pay ground rent, and did not preclude or otherwise impact the HOA's subsequent actions to approve a valid amendment to the Sublease.

### c.      Status of the HOA

¶22      Appellants argue that the superior court erred in finding that the pre-1994, unincorporated HOA was the same entity as the post-1994, incorporated HOA.[9] In support of this argument, Appellants rely on a footnote in the Willett Judgment, which states that "[t]he Association [referring to the Scottsdale Hilton Casitas Homeowners Association] is also known as the Hilton Casitas Council of Co-Owners, and, at times, has been incorrectly identified as the Hilton Casitas Counsel of Homeowners." Appellants argue that this statement clearly shows that the incorporated, non-profit HOA did not replace the initial HOA. We disagree.

¶23      In a 2016 memorandum decision, we previously considered Appellants' argument that the pre-1994, unincorporated HOA and the post-1994, incorporated HOA were different entities. *See London v. Karatz*, 1 CA-CV 15-0070, 2016 WL 5746236 (Ariz. App. Oct. 4, 2016) (mem. decision). In that decision we not only recognized that Appellants had previously and unsuccessfully litigated the status of the HOA in 2012, but also found that the superior court did not abuse its discretion in finding that the post-1994, incorporated HOA was the successor to the pre-1994, unincorporated HOA. *Id.* at *4, ¶ 17. This court further found that, although the previous records contained several names by which the HOA was known, the post-1994 HOA incorporated the pre-1994 HOA's declaration, membership purpose, and board of directors. *Id.* at *3, ¶ 16. Moreover, the post-1994, incorporated HOA used the same identifying information as the pre-1994,

---

[9]      Appellants have raised this argument at least three other times before the superior court and once previously before this court.

unincorporated HOA on its tax returns and had the same employer identification number. *Id.*

**¶24** As previously noted, the question of the HOA's status, and its authority to act on behalf of the casita owners, has already been litigated and decided numerous times. Thus, we decline to further review this issue. *Cf. State v. Astorga*, 26 Ariz. App. 260, 261 n.1 (1976) (finding "[a] court may take judicial notice of the record in another action tried in the same court" (citation omitted)); *accord State v. Lynch*, 115 Ariz. 19, 23 (App. 1977).[10]

### d. Vote by Pen

**¶25** Appellants argue the superior court erred by applying A.R.S. § 10-3704 (2013) to determine that the casita owners could ultimately approve the 2006 Amendment in a "vote by pen." Appellants contend the court was barred from applying A.R.S. § 10-3704 because it is inconsistent with A.R.S. §§ 33-1248 (Supp. 2017) and 33-1250 (Supp. 2017)—the statutes governing condominiums. *See also* A.R.S. § 10-3701(F) (2013) ("Notwithstanding this chapter, a condominium association shall comply with title 33, chapter 9 . . . to the extent that this chapter is inconsistent with the title 33, chapters."). Appellants' argument largely depends on the already-rejected assertion that the HOA is not an incorporated non-profit entity. In response, the HOA argues that the "vote by pen" was authorized and proper under either the statutes governing non-profit corporations or condominiums, and that Appellants waived this claim by failing to raise it before the superior court. Appellants, however, raised their concerns regarding the vote by pen at oral argument before the superior court and the validity of the 2006 Amendment was a question raised before the jury.[11] Thus, we review this issue on appeal.

**¶26** We review *de novo* questions of statutory interpretation. *See Nordstrom, Inc. v. Maricopa Cty.*, 207 Ariz. 553, 556, ¶ 9 (App. 2004). The statute codifying a corporation's ability to approve measures through a vote by pen provides that "members may approve any action that . . .

---

[10] Appellants additionally argue that the HOA failed to comply with A.R.S. § 33-1201 (2014) *et seq.* in incorporating as a non-profit and replacing the pre-1994, unincorporated HOA. As found above, Appellants have already litigated the question of the HOA's status, and this question has been decided against Appellants.

[11] Appellants additionally argued that a vote by pen was improper in their response to the Hotel's motion for reconsideration.

requires the members' approval without a meeting of members if the action is approved by members holding at least a majority of the voting power[,]" and is evidenced by the members' signed, written consent. A.R.S. § 10-3704(A). Section 10-3704(A) applies to non-profit corporations, like the HOA, so long as the HOA's governing documents do not contain contrary provisions. *See* A.R.S. § 10-3701. The record does not reflect, nor have Appellants argued, that the HOA's governing documents prohibit a vote by pen. In the absence of conflicting language in the HOA's governing documents, we defer to the statutory provisions which allow a vote by pen.

¶27 Moreover, whether the casita owners could approve the 2006 Amendment by a subsequent vote by pen was a question of fact explicitly raised and tried to the jury. We view "the evidence in the light most favorable to sustaining the [jury's] verdict," and we will affirm the verdict "if any substantial evidence could lead reasonable persons to find the ultimate facts sufficient to support the verdict." *Gonzales v. City of Phoenix*, 203 Ariz. 152, 153, ¶ 2 (2002). At trial, the parties presented the HOA's governing documents, information surrounding the 2006 Amendment, and had the opportunity to argue as to the respective validity of the vote by pen action. After considering the evidence, the jury by its verdict ultimately implicitly found that the casita owners validly approved the 2006 Amendment through a vote by pen. On this record, there was sufficient evidence to support the jury's verdict.

### e. Claim for Damages

¶28 Appellants argue that the superior court erred in dismissing the Elis' separate claim for damages. In 2013, the Hotel and the HOA moved to dismiss Elis' claim for damages, but the court denied the motion. Then, in 2014, the court (Judge Michael Gordon) granted the HOA's and Hotel's motion to strike the Elis' claim for unpled and undisclosed damages. After the case was subsequently transferred to a different judge (Judge John Hannah), the Elis argued that the court's order to strike the unpled and undisclosed damages did not entirely dismiss the Elis' claim for damages. The court held oral argument on the issue, and at Judge Hannah's request and over Appellants' objection, Judge Gordon participated. At the hearing, the Elis again argued that their disclosure of the amount of damages was sufficient and timely. The HOA's attorney argued that although the Elis' initial disclosure generally referenced damages, the Elis never calculated the damages nor provided an itemization of damages, as specifically required pursuant to Arizona Rules of Civil Procedure 26.1. At the end of the hearing, Judge Gordon clarified the scope of his earlier ruling, stating his express intention was to dismiss

the Elis' entire claim for damages. After considering the arguments of counsel, the superior court affirmed the dismissal of the Elis' claim for damages.

**¶29** We review a superior court's Rule 26.1 ruling for an abuse of discretion. *Jimenez v. Wal-Mart Stores, Inc.*, 206 Ariz. 424, 426, ¶ 5 (App. 2003). A claimant who brings a claim for damages must timely disclose "a computation and measure of each category of damages . . . the documents and testimony on which such computation and measure are based, and the name, address, and telephone number of each witness whom the disclosing party expects to call at trial to testify on damages." Ariz. R. Civ. P. 26.1(a)(7). This disclosure requirement is to allow parties a "reasonable opportunity to prepare" for trial. *Waddell v. Titan Ins. Co.*, 207 Ariz. 529, 537, ¶ 33 (App. 2004).

**¶30** We cannot say, on this record, that the court abused its discretion in dismissing the Elis' claim for damages. The Elis had ample time to comply with Rule 26.1 and, at a minimum, supplement their initial claim for damages and provide itemized damages and/or a method of calculating their proposed damages. The court determined that the Elis failed to make a timely disclosure. Moreover, while the superior court engaged in a unique procedure to clarify the previous judge's intent in his ruling to dismiss the Elis' claim for damages, this does not require that we reverse the dismissal on appeal. Even without that judge's clarification, the record provides a sufficient basis to dismiss the Elis' claim for damages.

###### f. Summary Judgment

**¶31** Appellants argue that the superior court erred in granting the Hotel's motion for summary judgment. In particular, Appellants argue that they did not breach the Sublease by entering the 2011 settlement agreement, which provided that the HOA would not interfere with negotiations between Appellants and the Hotel, and that they never made "a positive and unequivocal manifestation that they would not comply with the 1999 Agreement."

**¶32** Summary judgment is proper if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). We review the grant of summary judgment *de novo*, and view the evidence in the light most favorable to the party opposing the motion. *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 201 Ariz. 474, 482, ¶ 13 (2002). Rulings regarding contract

interpretation are matters of law, which we review *de novo. Miller v. Hehlen*, 209 Ariz. 462, 465, ¶ 5 (App. 2005).

¶33        Regardless of how we classify Appellants' decision to create a right to separately negotiate the ground rent without the HOA, we find that Appellants are not entitled to relief on the Hotel's breach of contract claims.  In the 1999 Amendment, Appellants explicitly authorized the HOA to act for and represent all the casita owners in negotiations regarding the ground rent.   However, in the 2011 settlement agreement between Appellants and the HOA, the parties agreed that the HOA will not interfere with separate negotiations between the casita owners and the Hotel regarding ground rent and that the HOA was not authorized or obligated to negotiate the terms of Appellants' subleases.

¶34        Appellants' arguments on appeal largely focus on their incorrect assumptions that the HOA was never properly formed and/or incorporated and that the Willett Judgment prohibited the HOA and the casita owners from approving a subsequent amendment to the Sublease.  As previously noted, we reject these arguments, affirming the HOA was the proper entity to represent the casita owners and that the 2006 Amendment, establishing the new ground rent, was properly adopted by the casita owners through their subsequent vote by pen.

¶35        On this record, the court's grant of summary judgment in favor of the Hotel was proper.  There was no genuine issue as to whether in the 2011 settlement agreement Appellants expressly reneged on their contractual promise to allow the HOA to exclusively negotiate the ground rent obligation.  The jury subsequently found damages flowing out of Appellants' unjustified refusal to pay the ground rent negotiated by the HOA in 2006 and legally apportioned to the casita owners.

### g.        Appointment of a Receiver

¶36        The Appellants argue the superior court erred by denying their request to appoint a receiver.  We defer to the discretion of the superior court in deciding whether to appoint a receiver and will only overturn the court's decision if its ruling amounts to an abuse of discretion. *Gravel Res. of Ariz. v. Hills*, 217 Ariz. 33, 36, ¶ 6 (App. 2007).  A court abuses its discretion if it commits an error of law.  *Id.* (quotation omitted).

¶37        After reviewing the parties' briefing and hearing oral argument, the superior court ultimately ruled that a receivership was not an appropriate remedy.  The court specifically found that the HOA was governed by a properly elected board of directors and officers, was

operating pursuant to a valid set of Bylaws, and was not incapacitated. Moreover, the court found that even if the HOA were incapacitated, the HOA's declaration provided for a remedy different than that of a receiver — that the Hotel take over control and management of the HOA's responsibilities. The record supports the court's ruling and we find no abuse of discretion.

> h. *Dismissal of Cases 1 CA-CV 16-0629 and 1 CA-CV 16-0654*

**¶38** Appellants argue that the superior court erred by dismissing Appellants' lawsuit requesting the appointment of a receiver (Case No. 1 CA-CV 16-0629) and that the court erred in dismissing their subsequent lawsuit requesting declaratory judgment that the Hilton Casitas Council of Homeowners was not the HOA (Case No. 1 CA-CV 16-0654). We have already reviewed these arguments and ruled against Appellants. The superior court's dismissal of these actions was proper.

## II. *DRL's Claims*

**¶39** DRL separately appeals the superior court's June 8, 2016 judgment holding DRL jointly and severally liable for the attorneys' fees awarded to the Hotel. DRL concedes that it failed to raise this argument before the superior court, but argues that we should review its claims because the question of whether DRL can be jointly and severally liable presents a question of general public interest and because it would be unreasonable, as a matter of law, to hold DRL liable.

**¶40** Because DRL did not raise this issue before the superior court, DRL has waived these arguments. *See Van Loan v. Van Loan*, 116 Ariz. 272, 274 (1977) (finding "[t]he failure to raise an issue either at the trial level or in briefs on appeal constitutes a waiver of the issue") (citation omitted); *accord James v. State*, 215 Ariz. 182, 191, ¶ 34 (App. 2007). Contrary to DRL's argument, this matter does not present a sufficient question of public interest and is not so inherently unreasonable to require that we review DRL's claims despite its waiver.

## III. *Attorneys' Fees*

**¶41** The Hotel and the HOA request attorneys' fees on appeal pursuant to A.R.S. § 12-341.01 (2016). In our discretion, we award the Hotel and the HOA, as the prevailing parties, their reasonable attorneys' fees and taxable costs, to be determined upon compliance with ARCAP 21.

## CONCLUSION

**¶42** We affirm the superior court's rulings in these consolidated appeals.



AMY M. WOOD • Clerk of the Court
FILED: AA