**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JEANEEN BONNETT,

Appellant,

v.

MOIRBIA SCOTTSDALE, LLC,

Appellee.

No.   20-60041

BAP No. 19-1293

MEMORANDUM[*]

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Brand, Taylor, and Lafferty III, Bankruptcy Judges, Presiding

Argued and Submitted July 9, 2021
Portland, Oregon

Before:  O'SCANNLAIN, PAEZ, and BENNETT, Circuit Judges.

Jeaneen Bonnett appeals the Bankruptcy Appellate Panel's ("BAP") decision

affirming the bankruptcy court's grant of summary judgment for Moirbia Scottsdale,

LLC ("Moirbia"), in this 11 U.S.C. § 523 nondischargeability proceeding.  We have

jurisdiction pursuant to 28 U.S.C. § 158(d), and we affirm.

Bonnett and Steve Goumas, her long-time business partner and personal

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

acquaintance, jointly developed a restaurant called Rula Bula the Tempe Irish Pub ("Rula Bula"). Goumas, through several layers of corporate entities, partially owned and operated Rula Bula, while Bonnett owned the intellectual property and provided professional services to the restaurant. By 2010, Goumas had become insolvent, and Wells Fargo obtained a stipulated judgment against him for $2 million, which Moirbia later purchased. In 2011, Goumas sold Rula Bula for cash and a $360,000 promissory note payable to one of his corporate entities, Perfect Pint Holding Company, LLC, ("Perfect Pint"). Goumas then conveyed his management interest in Perfect Pint to Bonnett, allegedly in partial satisfaction of debts owed to Bonnett. From the management interest, Bonnett received $61,054 in distributions and $50,333 in payments on the note. Separately, Goumas also assigned checks totaling $90,609 to Bonnett.

In 2014, Moirbia sued Goumas and Bonnett in Arizona state court, seeking to set aside and recover Goumas's allegedly fraudulent conveyances to Bonnett. After a bench trial, the court made these findings of fact:

> 20. Goumas and Bonnett's personal relationship had a significant impact upon their business dealings and their intentions underlying the transfers . . . .
> ***
> 24. Madison [Bonnett's corporate entity] and Bonnett are insiders as to the Debtor entities.
> 25. When Lis Doon Varna [another restaurant developed by Goumas and Bonnett] faced financial difficulties, . . . Goumas and Bonnett constructed a scheme to transfer assets away from the businesses the Debtors operated to Bonnett for the purpose of protecting those assets from creditors.
> ***

2

57. The transfer of the Management Interest was made with the intent to hinder, delay or defraud creditors of Goumas [and related entities].

\*\*\*

94. The Bonnett defendants did not receive any of the above-described transfers . . . (including the interest in the [promissory note] and other transfers associated with the assignment of the Management Interest, and the assignments of checks payable to Goumas) in good faith.

The court thus ruled for Moirbia on two counts of avoidance of a fraudulent transfer, Ariz. Rev. Stat. (A.R.S.) § 44-1004, and entered judgment against Bonnett for $510,325 and interest. The state appeals court upheld the judgment.

Bonnett then filed for bankruptcy. Moirbia filed an adversary complaint seeking to except its state court judgment against Bonnett from discharge under 11 U.S.C. § 523. The bankruptcy court granted summary judgment for Moirbia.[1] The court held that the prior state court proceeding precluded Bonnett from relitigating whether her debt was obtained by "actual fraud," and thus the judgment was excepted from discharge under § 523(a)(2)(A). The BAP affirmed.

We review de novo BAP decisions and apply the same standard of review that the BAP applied to the bankruptcy court's ruling. *Boyajian v. New Falls Corp. (In re Boyajian)*, 564 F.3d 1088, 1090 (9th Cir. 2009). We review de novo the bankruptcy court's decision to grant summary judgment. *Id.* The availability of

---

[1] The bankruptcy court previously denied summary judgment on whether Bonnett's debt was obtained by "willful and malicious injury." *See* 11 U.S.C. § 523(a)(6). After granting summary judgment on the basis that Bonnett's debt was obtained by "actual fraud," 11 U.S.C. § 523(a)(2)(A), the bankruptcy court directed entry of final judgment against Bonnett.

issue preclusion is a question of law that we review de novo. *Dias v. Elique*, 436 F.3d 1125, 1128 (9th Cir. 2006).

In bankruptcy proceedings, "[t]he preclusive effect of a state court judgment rests upon the preclusion law of the state in which the judgment was issued." *Ormsby v. First Am. Title Co. of Nev. (In re Ormsby)*, 591 F.3d 1199, 1205 n.3 (9th Cir. 2010). Under Arizona law, issue preclusion is available when an issue "was actually litigated in a previous proceeding, there was a full and fair opportunity to litigate the issue, resolution of the issue was essential to the decision, a valid and final decision on the merits was entered, and there is common identity of parties." *Hullett v. Cousin*, 63 P.3d 1029, 1035 (Ariz. 2003). The issue must be "identical in all respects with that decided in the first proceeding." *S. Point Energy Ctr., LLC v. Ariz. Dep't of Revenue*, 382 P.3d 1226, 1229 (Ariz. Ct. App. 2016) (citation omitted).

A transferee who receives a fraudulent conveyance with the requisite wrongful intent also commits actual fraud, and any debts traceable to the fraudulent conveyance will be nondischargeable. *Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586, 1588–89 (2016). The issue in this proceeding is whether Bonnett received the conveyances with the intent required to commit actual fraud herself. Bonnett argues that this issue of her fraudulent intent is not identical to any of the issues decided in state court, and that even if it were, the state court allocated the

4

burden of proof differently than it is allocated in determining nondischargeability. She also contends that her intent was not actually litigated or essential to the state court's decision. We disagree.

1. There is an identity of issues. Bonnett's wrongful intent in receiving the fraudulent conveyance from Goumas was decided in the state court proceeding. The state court found that Bonnett did not receive the conveyances in good faith. Thus, the state court determined that Bonnett "knew, or should have known, that . . . the purpose of the trade, so far as [Goumas] was concerned, was the defrauding of his creditors." *Carey v. Soucy*, 431 P.3d 1200, 1206–07 (Ariz. Ct. App. 2018) (citation omitted). The state court also found that "Goumas *and Bonnett* constructed a scheme to transfer assets," (emphasis added), and that transfer was made with the intent to hinder, delay, or defraud. Thus, the state court determined that Bonnett was not merely a recipient of the transfer, but also a full and equal participant in Goumas's fraudulent scheme. We thus hold that the state court decided the issue of Bonnett's fraudulent intent in receiving the conveyances.

2. There is no shift in the burden of proof that would defeat issue preclusion. Both parties agree that, in this proceeding, Moirbia bears the burden of proving Bonnett had the requisite intent to commit actual fraud. *But cf. Otto v. Niles (In re Niles)*, 106 F.3d 1456, 1461 (9th Cir. 1997). But Bonnett argues that, in state court, she bore the burden of proving she received the transfer in good faith (or without

5

fraudulent intent). *See* Uniform Fraudulent Transfer Act § 8(a), cmt. (1). Thus, she claims the burden of proof has shifted and issue preclusion is no longer available. *See* Rest. 2d Judg. § 28(4). But Bonnett's responsibility to prove the ultimate issue of good faith does not necessarily mean she also had the burden of proof on all evidentiary findings bearing upon good faith. Here, the state court decided that Goumas and Bonnett jointly constructed the transfer scheme for the purpose of determining whether Goumas had the intent to defraud his creditors. *See Carey*, 431 P.3d at 1206. Because Moirbia first had to carry its burden of proving Goumas's fraudulent intent, it had the burden to prove the finding that Goumas and Bonnett constructed the scheme together. *See Premier Fin. Servs. v. Citibank*, 912 P.2d 1309, 1314–15 (Ariz. Ct. App. 1995). Thus, the burden of proof did not materially shift to defeat issue preclusion.

3. Bonnett's participation in the fraudulent conveyance scheme was actually litigated. Moirbia raised the issue in its pretrial statement, and the state court decided that Goumas and Bonnett constructed the scheme together. *See Chaney Bldg. Co. v. City of Tucson*, 716 P.2d 28, 30 (Ariz. 1986) ("When an issue is properly raised by the pleadings or otherwise, and is submitted for determination, and is determined, the issue is actually litigated.").

4. Finally, Bonnett's role in constructing the fraudulent conveyance scheme was essential to the decision. To award a judgment against Bonnett, the state court

necessarily decided that A.R.S. § 44-1008(A), which shields a transferee who took the conveyance in good faith and for reasonably equivalent value, did not apply. That Bonnett constructed and participated in the scheme establishes her knowledge of the fraudulent purpose behind the conveyances. The state court necessarily relied on this fact to reach its ultimate conclusion that Bonnett did not receive the conveyances in good faith, because it made no other findings relevant to Bonnett's good faith (or lack thereof). Thus, Bonnett's fraudulent intent was essential to the state court judgment.

The bankruptcy court correctly determined that the state court proceeding precludes relitigation of whether Bonnett received the conveyances with fraudulent intent. Moirbia has established nondischargeability under § 523(a)(2)(A). Thus, the bankruptcy court did not err in granting summary judgment for Moirbia.

**AFFIRMED**.